19-3043 Good morning, Your Honors. May it please the Court. My name is Meredith Esser. I'm with the Federal Public Defender's Office here in Denver and I'm absolutely no information in the warrant application that Mr. Stein owned a computer, used a computer in his home, or used a computer in his home during the course of the conspiracy or for any criminal activity whatsoever. And accordingly, there was no probable cause to support the search for computers in his home. I want to go back to... Does that argument extend to a thumb drive? In other words, it sounds like your focus is on whether he owned a computer, but would the warrant and the affidavit have supported seizure of a thumb drive found in the home? Yes, my argument extends to... I think I'm using computer as sort of a casual phrase for electronic devices other than a cell phone, but it does extend to the thumb drives as well. There was nothing in the home about thumb drives or computers belonging to and being used by Mr. Stein exclusively. And that sort of brings me to what... Counsel, could I just... Sure. Just a quick follow-up. Why shouldn't the agents be able to search... If the warrant is for a search for evidence of the weapon of mass destruction offense, why wouldn't they be able to collect things like a thumb drive to determine if it contains that evidence? I think that it really turns on sort of the nature of this investigation. The co-defendants in this case were a group of individuals from rural Kansas farming communities. Much of the investigation focused on improvised explosive devices using common household items. There wasn't... I mean, if you read the the warrant application, they did use their cell phones to communicate with each other, but many of their meetings happened in isolated locations where they were meeting in, you know, open fields in rural Kansas. And the nature of the offense I actually don't think is one that really lended itself to the use of electronic devices. Didn't they download instructions on how to build a bomb from the internet? What the application said is that one of the co-defendants looked at YouTube videos of how to make homemade explosives. But Mr. Stein was not present at that time and that was actually reported by Mr. Allen's girlfriend to the police. So... I'm And so, I mean, I think that going back again to just looking at what was actually in the warrant application, there was a report that the co-defendants were at Mr. Wright. He's another co-defendant. He owned a mobile home company and the computer that they were using was at his place of business. And they did some... they pulled up Google Maps and looked at different potential targets. And then they researched mosque prayer times online. But that activity all happened at a separate... at a location that was separate from Mr. Stein's residence. He went there to do that as part of one of their meetings. And then there was the YouTube video. Okay. I have a more I'm curious what both counsel think about that. I'm pretty confident we see lots of warrants saying drug cases, saying we want to search this house, look for bank records, ledgers, sales, correspondence that shows that the defendant lives at his place, all sorts of things where the warrant affidavit doesn't say there's any evidence that the defendant has a bank account, keeps a ledger, has an account with the gas company that would show his name would be on the but we allow that search and often that sort of evidence is uncovered. There may be photographs of his being with drugs because that's the sort of thing you find as evidence of this offense. And this is kind of a follow-up I think to what Judge Matheson was asking about. Do you really need to have in the affidavit that sort of detail to show you can't seize a ledger unless you had information before the search that's in the affidavit that this person had a ledger? Do we really require that? Isn't it enough that computers these days frequently contain a lot of information about people and the group, the He may not have a computer, but if he does, they should be able to seize it and perform a reasonable search of it for evidence of the offense. I do understand the question. I think that, I mean, my response to your question is pretty similar to my response to Judge Matheson, which is just that the nature of this particular investigation where the FBI was surveilling these almost eight months, where there were hours and hours and hours of recorded calls, where, you know, it was a very detailed investigation and there was nothing in the application about Mr. Stein having a computer. I think in that circumstance, it's actually a fair assumption to believe that he did not have a computer when the nature of the investigation was so extensive, when much of the activity was... But isn't the point if there is a computer there, it's likely to have information about the offense? We don't know if there's going to be a computer there. We don't know if he's going to have another cell phone. And I think, but I think that that's all, I think that's all speculation and I think in this particular case, given the nature of the investigation, that if he had a computer, the government would have known about it. And in fact, this brings me to the Franks issue, which is... To get to Franks, what if there had been a filing cabinet at the house, but there was nothing about a filing cabinet in the investigation, the warrant, the affidavit, but wouldn't the search be allowed to look in the filing cabinet to see if there's evidence of the offense? I mean, I think that a filing cabinet is different from a computer in that some of the other items in the warrant that maybe they did have reasonable, a reasonable belief would be in his house, would have been contained in a filing cabinet. But isn't a computer just an electronic filing cabinet? But what, I'm not sure I see the difference in terms of relevant evidence. I think that the difference is that, you know, this was not a case that was cited in the case, which is Riley, which says that the computer is more like a house than it is like a container. And so, you know, again, this is not something that was argued in the briefs, but there is a sort of a different degree of expectation of privacy with computers. So that's just sort of an atmospheric sort of background point. But I still think that the point stands that in order to... I mean, a specific, a very tangible specific item that in an investigation like this, there, I think that there just would have been more evidence available to the FBI if he had actually owned a computer. Well, as I understand your statement, I don't think you're disagreeing with Judge Hertz that you ordinarily wouldn't need to include in an affidavit that, yes, there affirmatively is a computer in the house and we want to search it. We can often assume that. Your point, I thought, was that here there is affirmative evidence that there was not a computer in the house. Yes, that goes to... And so it's not that you said something wrong, it's that you omitted something. Now, in most cases, there won't be affirmative evidence that there was not something, so you simply just kind of assume there might be a computer in the house. You say search the house for any computers. But when you have affirmative evidence that there's not a computer, then your point is to have an accurate affidavit, you need that inclusion. So that's... Did I misunderstand your argument? No, that goes to the Franks issue, which were the omissions that we submit were material omissions from the affidavit. But real quickly on the Franks issue, there were several times when you have made statements in terms of the affidavit that you were not arguing that the affidavit was insufficiently precise about what to search. You were arguing that the affidavit was inadequately describing the fact that there was a computer at all. Did I misunderstand that concession that I thought several times I read in your briefing? I don't know, I'm not sure exactly what you're referring to, but we did argue that there was no probable cause, and then also the warrant was insufficiently particular. Well, but insufficiently particular because it did not particularize that there was, in fact, a computer in the house. Yes. Yes, but not, but I think below, I don't think that you made an argument that the warrant was not sufficiently particular about what to search for, when, I mean, you clearly did on appeal make that argument, but I'm, I thought that there was a statement that below you, you told the court, we are not arguing how the computer search should take place, but rather whether a computer search should take place, because there wasn't a computer at all. We're not correct, if I remember that correctly, then do you even, have you even preserved an adequate record on appeal about whether the affidavit was, under Frank's, was sufficiently particular? Okay, so I feel like there's a lot to unpack there, so I just want to do it in a methodical way. So the dispute about the record below, I believe, was that the district court lawyer affirmatively said that they, that he was not challenging the search of computers, in other words, the manner, the manner in which computers were searched. That's the point. But he did preserve the issue of whether the warrant had probable cause to search computers, whether there was sufficient probable cause to search computers. Because they didn't have evidence that there was, in fact, a computer, but that's very different from the, the particularity argument that is being made on appeal. He also preserved a straightforward probable cause argument. So there's the probable cause argument, and then there's the Frank's argument, which he absolutely preserved. A straight probable cause argument, there's no probable cause to search for computers. He also preserved the separate Frank's argument, which was the subject of the, of the multiple evidentiary hearings below. And then there was a third argument, which I think is where the preservation dispute really is most fleshed out, which was about the particularity argument. And our position is that that was also preserved, although I think in my reply brief I acknowledged that the record is pretty muddled on that point. Don't we have a statement by him saying, I am not challenging something about how the computer would be searched, but rather whether it could be searched? Yes. And the issue there, I think, is the question of what does particularity really mean? Because the district court lawyer talks about over-breath and talks about there's no particularity, the particularity requirement isn't satisfied because there wasn't probable cause. And so I think in, in the record below, there was some sort of ambiguity about what the district court lawyer was actually saying, but our position is that he made a facial challenge to the warrant based on particularity, and that that aspect of the particularity challenge was preserved. Let me phrase my question a little differently, but it's essentially what I was getting at before. The warrant can issue, if there's probable cause, to believe evidence of a crime at the location, and the warrant allows you to the warrant gives you the right to search a resident, say, and to seize certain listed objects. Before you can list an object there, do you need to have probable cause to believe there is such an object there and that it will include evidence of the crime, or do you just need that if such an object is there, you can seize it because there's probable cause to believe it will contain evidence? In other words, do you really need any probable cause to believe that a particular object is in the search premises? Is it enough that if there is such an object, you should be allowed to seize it under the warrant? That's why it's listed in the warrant, because it's likely to provide evidence, and that's my question, really, because I think that may be determinative here. Given the Frank's information, I think you have a good argument that there wasn't probable cause to believe there was a computer there. I'm not sure you need that to be allowed to seize it if there is one there, so can you respond to that? I think that, so what you're asking is, and I apologize if I articulate this incorrectly, but I think, are you saying that, because I didn't articulate it, if it's in the warrant, I mean, I think what you're saying is if it's in the warrant, and it's there, you can seize it, but it seems to me that the probable cause question is like a threshold question. You need to have some, it's a fair probability that that object is going to be there, and it has to be, I mean, I think it is case specific, which is that it has to be described with as much specificity as the government's knowledge and circumstances allow, which obviously is a slippery standard, right? I mean, it just doesn't have that much information in a particular case about a particular crime, and I think that's why I keep going back to this issue of this, this case was being investigated for eight months. I think the government had a lot of specificity about what was happening, and yet they didn't have any information about the computer, about a computer at Mr. Stein's residence. I also think it's worth noting that this was an omnibus application, and so it's possible that they included computers just because the other co-defendants had computers, but they weren't very careful in excising that from the warrant as to Mr. Stein. So I don't think I answered your question as satisfactorily as you may have wanted, but I think that in your hypothetical, if that were the case, officers would be able to put everything under the sun in a warrant, and then if it happened to be at a residence, would be able to seize it. Only something that would be likely to have evidence of the crime, but I'm just interested if there's case law, because I don't ever recall seeing this issue, but... Sorry, I do think that the Griffith case that was cited by defense counsel is instructive, so... Judge Matheson, did you have a question? No. Okay, I hear ruffling there, and I think that's your movement to ask questions. Okay. Thank you, Your Honor. May it please the Court, Elisa Filo for the United States. This Court should affirm the District Court's denial of Stein's motion to suppress. Picking up on your discussion of probable cause with my opposing counsel, the necessary probable cause here is not that Mr. Stein was using a computer. It is probable cause to believe that digital evidence of this crime would be found in the house. That's the nexus that this Court has described in its cases. The nexus between the evidence that's sought, the crime alleged, and the place to be searched. And in this case, that's the digital evidence in Stein's home that might contain evidence of the conspiracy. And when we ask whether there was a sufficient nexus, this Court has given four factors that instruct the analysis. The government thinks three are instructive here. The type of crime, the nature of the evidence, and reasonable inferences as to where that evidence might be. First, on the type of crime, this was a long conspiracy where the co-conspirators were using technology to amass and trade information. Stein is specifically alleged to have been using a cell phone and tech-savvy apps on that cell phone to regularly discuss this crime with his co-conspirators. His co-conspirators are both alleged to have used technology as well. One is alleged to have used a computer to research the locations and printed out materials about an explosive device. And the other watched YouTube videos to determine how to make a bomb. It is a reasonable inference on this type of crime where the technology over this course of a long and an extensive process of researching and discussing that there would be digital evidence on other devices. And once you determine that there's digital evidence on some devices, and there's certainly no dispute that there'd be digital evidence on cell phones, the nature of this evidence is that it can be transferred easily between devices. Whether Stein conducted surveillance and then put photographs on a CD with information about how to make a bomb, this type of electronic digital evidence can be transferred unintentionally or intentionally. So once you have probable cause to believe that there is digital evidence, then there's probable cause to believe that it would be captured on other devices. And that's the Reichling case in the Seventh Circuit. And Your Honor asked, Judge Harts asked if, you know, whether once you have evidence, once you have probable cause of digital evidence, is there any authority to search for the containers that would have that? And I would suggest you look at the Reichling case, which is instructive on this idea that once there was digital evidence, once the defendant conceded that there was evidence on cell phones, the court thought it was common sense that it would be found on other devices and that you didn't need separate probable cause for each of those acts of opening. Well, I think the question isn't whether you would need it in an ordinary sense. I think the question is when you have other evidence that he did not have a computer, that it's an omission here that that other evidence should have been included in the affidavit. Not that if you didn't have that other evidence, you wouldn't have needed to make a statement about computers. You just simply say, we want to search the house for these things that would be evidence of a crime. So it seems to me, Your Honor, the facts here are a little different than the So on the Franks issue, so first you have to determine whether there's probable cause on the face of the affidavit itself, which we maintain that there is. But then you ask with the Franks question, was there omitted information that would have negated probable cause? And this is important, again, about how you define what probable cause you're looking for. Again, this is not probable cause that he had or used a computer. It's probable cause that digital evidence of this conspiracy would exist at his house. And the four omissions simply do not negate probable cause to that extent. On the first omission, that's Stein telling a confidential informant early in this conspiracy not to use a computer. Says nothing about his own use of a computer, either then or later in the conspiracy. The second and third statements are Stein looking for a computer. And I should acknowledge there's a mistake in our brief at page where we misattribute the comment about the Google Chromebook. That wasn't Patrick Stein saying that, but the confidential human source brought up the Google Chromebook. So that can just be stricken from our brief. But it doesn't change the statements as a whole, that he's looking for a computer in furtherance of this crime, and that he's interested in using technology, either his cell phone or this computer he's seeking, in order to further this brief. Because I recall you're saying he was looking for a computer. You're saying that was not Mr. Stein who said that? He was looking for a computer. Just the specific statement at page 27 of our brief that is in quotes, someone is looking at the Google Chromebook, that was misattributed. The rest is completely accurate. Stein responds that he wasn't interested in that particular make of a computer because he associated Google with the feds. But that doesn't change the nature of the conversation or any of his comments about looking actively for a computer, just the one statement about the Google Chromebook in particular. So you think even with the Frank statements, I'll call them, included, there was still, that did not negate, at least not strongly enough, the possibility that he had a computer at home? It did not negate the fair probability that digital evidence of this conspiracy would be at his house. Whether that's the thumb drive, the CD-ROMs, or the computer, the fair probability existed based on those three big low factors, the type of crime, the nature of this evidence, and reasonable inferences about where it would be located. And as my opposing counsel noted, they use computer often as a shorthand for every electronic device other than cell phones. But the Frank statements really only go to a computer. They don't say anything about any other electronic devices. And indeed even on the issue of a computer, it says that he's actively looking for one, but we have no knowledge about whether he had one before that stopped working or if he acquired one that he was actively looking for after those conversations. What was the most recent statement? What was the time gap between his last statement that he didn't have a computer and when the warrant was obtained? His own statement, I believe, was in August. The confidential informant summarizes those statements on September 27th, I believe, and then he's arrested on October 14th and the warrant is executed on October 14th. Those dates you can confirm in our brief just to make sure. But so when you look at the probable cause assessment, you're asking again if there is probable cause and a reasonable inference that digital evidence would be at his house. And this does not, I want to emphasize, give carte blanche for police officers to open up these devices and search them at will. You're still constrained by the particularity analysis. And whether or not the digital evidence put forth is sufficiently specific so the officer's search of those devices is limited. And we maintain the government understands Stein's opening brief to concern the search of the devices. And there's a whole subset of this court's case law about those specific paragraphs in the warrant detailing electronic media. We understand that based on the question presented and the arguments actually developed. This was affirmatively disavowed below and under federal rule of criminal procedure 12, as this court interpreted in Burke and recently reaffirmed in Boline, those arguments aren't just waived, they're unreviewable. This isn't plain error under rule 52. This is waiver under rule 12. But if you turn to the merits, the government maintains that this warrant was sufficiently particular. And it's perhaps helpful to conceive of the 16 paragraphs in this warrant in two buckets. There's the bucket of physical evidence such as PVC pipes, chemicals, and nails that could be used to construct a U.E. And those are all tied to the crime alleged. Admittedly, it is a long list of items. That's because, as the district court found, a long list of items can be used to make a homemade bomb. That second bucket is digital evidence and instrumentalities such as documents, graphic files, and contacts that relate to the crime. And this court has made very clear if you get to the limit what the officers are looking for, either to the crime alleged or to the type of material. And that's the United States v. Christie case. And here, many of the paragraphs dealing with electronic media are affirmatively limited to this type of crime. One of the paragraphs does not. So I think three of the paragraphs are not. J, K, and L admittedly do not have contain any self-evident. One of them did and the others didn't, right? Yes. So the digital evidence, the specific digital evidence paragraphs do contain limitations. And the government's position is that you have to understand this warrant in context, as this court has instructed in all of the cases considering the particularity of computer searches. Even Otero, which the opposing counsel relies on, looked at this warrant in context and there was persuaded by the difference, the physical structural difference of the warrant. There were two sections. The introductory paragraph in the whole affidavit talks about the search for computers pertaining to weapons of mass destruction, right? I'm sorry. Doesn't the introductory paragraph to the affidavit say we're trying to find evidence about weapons of mass destruction? Certainly the affidavit makes very clear throughout the affidavit that they're looking for evidence of this conspiracy to use a weapon of mass destruction. And the affidavit, which was signed by the magistrate judge and attached to the search warrant, makes clear that they were utilizing the two-step procedure under federal rule of criminal procedure 41, where you seize the devices, you take them off-site so that you can do the specific and particular search of the devices to find those other paragraphs that are appropriately limited to the crime or to specific types of material, as this court has instructed. The government maintains that this warrant was sufficiently particular and supported by probable cause, but in any event, the good-faith exception would apply. This court should presume good faith unless limited and specific circumstances are present. Here, Defense Counsel argues that this warrant was so lacking in probable cause and so lacking in particularity that the officers were not reasonable to rely on it. That's simply not the case. For a warrant to be found so lacking in probable cause that officers can't rely on the magistrate judge's determination, you have to find that it's not even a minimal nexus, let alone a sufficient nexus. And for all the reasons we discussed for why there is a sufficient nexus for digital evidence, there is certainly a minimal nexus. And turning to the particularity for a warrant to be facially deficient, the courts look at both the face of the affidavit as well as the conduct of the search. And here we know that officers understood themselves to be limited because when they found evidence that was outside the scope of the warrant, when they found that evidence of child pornography, they stopped their search. You know, I'm intrigued about that argument. I think there is some case law that supports you, but the statement that we can look how the officers conducted themselves as evidence of the sufficiency of the limiting nature of the warrant itself strikes me as a little bit akin to we ought to be able to say that the fact they discovered incriminating evidence is sufficient to document the adequacy of the warrant. I feel very uncomfortable with making a decision about the adequacy of the warrant turn on or at least be influenced by either whether incriminating evidence was found or that the officers conducted themselves with dutable restraint afterwards. Both of those make me feel very uncomfortable. The question of whether how the officers conducted themselves is really concerned with trying to understand how this warrant was understood at the time. Did they understand themselves to be limited the way that we now are hypothesizing? The test isn't how they conducted themselves. The test is whether the warrant constrained them. It certainly is for the particularity analysis, but for the good faith analysis, this court has looked to see if the if the officers executing the search understood it the way that... I see, I see what you're saying. Okay, thank you. And if you are uncomfortable... I understand your argument now, thank you. Then the other factors that this court has looked at, I would I would urge the applying the good faith exception there, apply here, including that the affiant was present at the search, the magistrate judge signed the affidavit as we've discussed, the conduct was limited when they were searching, and that it simply doesn't deter unlawful conduct. For all of these reasons, the warrant which the officers reasonably relied upon was supported by probable cause and there are no further questions this court should affirm. Judge Matheson? None here. Okay, thank you. Your time expired, but we asked a lot of questions toward the end, so I'm going to give you 30 seconds if you want to correct something. Thank you. I think I would just kind of go back to this interplay between the probable cause question, which the district court called a close call, and the Franks question. Which were the material omissions about Mr. Stein's computer ownership. There were several times in which Mr. Stein told the government informant that he was either looking for a computer, didn't have a computer, and and then the last statement which was made on September 27th, approximately two weeks before Mr. Stein's arrest, was that the informant said he doesn't have a computer. So, I mean, even if one thinks about this in terms of digital evidence, I think it is also important to just keep in mind that Mr. Stein was, although he was using his cell phone, he was not a digitally savvy person. Thank you. Okay, thanks. And I would ask this court to reverse. Thank you, counsel. Case submitted. Counselor excused. Court is in recess until 9 tomorrow morning.